Alan C. Cartwright v. Alan C. Garner Frank Caprio Alan Garner Alan C. Cartwright v. Alan C. Garner   John Diller Alan C. Dillery Alan C. Cartwright FST Money Further Policy Justin Takabashi v. FST Jefferson Family partnership John Diller v. Feng Royal argument not to exceed 15 minutes to decide Mr. Officer John Diller to reserve two minutes for dismissal based upon finding of subject matter jurisdiction problems. It is along with myself, Justin Mitchell, my father Jerry Mitchell and I represent the plaintiff Alan C. Cartwright. We would submit, Your Honor, that there are four strong reasons why the order granting        The second reason is that the case was dismissed versus stayed based upon an analysis of the case. The third reason is that the case was dismissed versus stayed based upon an analysis of the case. The third reason is  based upon an analysis of Princess Leta, the 1939 U.S. Supreme Court case without consideration of the developments in subject matter jurisdiction analysis under Federal abstention concepts. Subsequent to that, the district court as a result of that analysis found that there was no subject matter jurisdiction rather than a finding that there was subject matter jurisdiction but that it was declining to exercise that jurisdiction, and then finally the fourth reason is based upon a finding of fact that both the state court action and the federal court action quote, concerned trust administration. And I think that last part, if I may take that first, is derived from a Tennessee Code annotated section 25.15.203, which is a two-part statute for Tennessee law, the first part of which has been cited by the Council for the Defendant Appellees, which indicates that if two cases both concern trust administration and the court first asserting jurisdiction maintains that jurisdiction. The second part, part two of that statute however, says that cases involving trusts, which we believe and submit that the complaint in this case does, involves trust but it does not concern trust administration, but any court has concurrent jurisdiction. If you look at the complaint itself rather than rely on the allegations made by the appellees in their argument to the district court, you will find that none of the allegations are against trusts themselves. None of the allegations are against individuals acting in their capacity as trustees. All of the allegations in this federal court complaint are made with an analogy, it's like a cloud amalgamating rainwater and the circuit court and chancellery court actions, state court actions are based upon the farmer who is waiting for that rain. Trust administration would be analogous to the farmer who is waiting for the rain, but this federal court action concerns allegations of trust, not trust allegations, I'm sorry, tort allegations against some of those same individuals for breaches of fiduciary duty, etc., that they have performed at the level of trust management. So it is not what you are saying if it is a suit against a fiduciary then you don't worry about this doctrine. Well, no you are not against the race itself. It's not just a question of a suit against a fiduciary, it's what happens to a citizen there. Is that what it is? Well, it's a suit against the individuals acting in fiduciary capacity, but as managers of a trust, managers of a partnership. See, that's where I think he's, I'm not   with something, but help me here. Sure. Some of the same human beings are trust administrators and managers of state courts, some of them are managers of some of these other entities. Defendant Alan Garner and Defendant Alice McCarthy are both the same people, but they are wearing different hats. I understand that, but at this point at least you are trying to distinguish or claiming that you are distinguishing what they did in these management capacities, not what they did in the trust capacities, but my question is if that's really true, if with their trust administrator hats they are completely honest and straight up, then shouldn't it be the trust that's suing them for what they did with their other hand? It's like a shareholder derivative suit you have to sue in the name of the corporation. Your Honor, unfortunately, Alan Cartwright, the beneficiary of the Alan Cartwright Grant of Trust, has no standing to bring that suit against the Garners because they aren't the trustees. But he would have standing to bring suit against them as trustee, which is, that's why it seems to me, or at least I'm putting to you, the reality is, I mean, I haven't parsed your complaint closely enough to be confident how I would come out on that, but in reality, as trustee they're not doing right because their other arm is not doing right. Therefore, as trustee they've got to know what they're doing. So the reality is, your claim is they're breaching their trustee duties. In reality, Your Honor, I disagree. It's not that they're breaching their duties as trustees in this lawsuit. I'm not complaining against the farmer in this federal court lawsuit. The allegations are against what they've done at the level of managing the farm. But in your case, the farmer in the cloud would be the same thing. The farmer is God. Yes, Your Honor, but again, I would have no standing to bring a lawsuit against the farmer in this case. The allegations in the federal court complaint are not against them based upon what they've done as trustees. Again, if you go back to Tennessee Code 2515-203, it clearly distinguishes between suits brought about by the federal court lawsuit and a personal jurisdictional matter based upon Penoria v. Neff without analyzing any of the subsequent procedural history of personal jurisdictional case law. Burger King, Asahi, Worldwide Volkswagen, International Shoe, any of the cases that is a 1L, you would study in your discussion of personal jurisdiction. The counsel, from a practical point of view, what difference would it make, that is, if they abstained, they would wait until the next hearing,       wait until the next hearing, and if they abstained, they would wait until the next hearing, and if they did not wait until the next hearing, they would wait until the next hearing    hearing until the next hearing until the next hearing until the next hearing until the next hearing until the next hearing until the next        next hearing until the next hearing until the next hearing until the next hearing terms I I I I II II I II I II I I II 2 I II I I II 2 I I I I II I II I II III II III I IV III III II III IV III IV III III I II  III IV IV I IV I I I II I I IV I III III I IV I III IV I IV I V III V IV I IV I V IV IV I IV V IV IV IV V V          VI VI VI VI VII VI VI VI VI VI VI VII VI VI VII Z VII VII II IV V         VII VII VII VI II VII VII VII VII VII V VI VI VII V II VI V III  VI III IV V IV IV V V IV V V IV IV IV IV IV V V IV V IV IV IV VI VI VI V VI VI I I II III 3 III II III VI VI III V I V I SO I II II    VI III  IX V V II II III V IX III right 1 3 III IV IV V IX I VI I IX IV V IX III VII VII IV IX VII VII VII VII VII VII IV VI V IX IX VII VII VI IV IX IX IX IX IX VI IX IX V IV IX     VII VII IV V IX IX IX V V IX IX IX V IX IX IX IX IX IX They say, and I quote, Allen C. Cartwright took a voluntary dismissal as to all of the remaining claims unspecified in the Order, which included all the tort allegations first raised in the 2007 Circuit Court complaint, and which are now included as part of the complaint in this cause. Well, what they're saying is, is that this cause, the federal case, has got all of those actions that, quote, were tort actions out of the 2007 Circuit Court case. I'd like to point out first, Your Honor, on the question of what we're really talking about. Are we talking about a partnership in which Judge McCollough has quite frankly noted all of the trust members, 15 trust members of that partnership own the majority of the assets in the partnership. They are all named in that Circuit Court case. And in paragraph 30 of the Circuit Court case, that they say is the model for the federal court action, they state, and I'll quote, the conspiracy among the defendants to wrongfully convert plaintiff's funds from his trust, and not his trust, there were other beneficiaries, but his trust to their own use, continues up until and including the filing of this complaint. Defendants continue to work together to shift and manipulate funds among the trust so as to benefit themselves rather than the lawful beneficiary, Alan C. Cartwright. Thus, the defendants herein by conspiracy have utilized the Jackson Capital Partners Limited Partnership as a vehicle for conversion of these funds to the detriment of the plaintiff. The horse has to do with what they did as trustees manipulating funds allegedly, and that horse is in the barn of the Chancery Court in Tennessee, in the state courts. In paragraph 34, they say, the wrongful actions of defendants occurred in Memphis, Tennessee, and the harm was directed toward trust created in Memphis, Tennessee, and toward plaintiff in Tennessee. And again, in this Circuit Court allegation, a complaint they say is the model for the federal complaint, paragraph 38, defendants have intentionally and maliciously conspired to cause a conversion of plaintiff's trust fund assets and reduce the value of plaintiff's beneficial interest by placing his trust assets into the Jackson Capital Partners Limited Partnership. Now, in the federal case, they don't mention the trusts, they took them out, but I suggest to you as Judge McCollough did when he cited 35 paragraphs of this complaint dealing with For example, paragraph 37 of the federal complaint we are here on today, nevertheless, the trusts of which he had the primary beneficial interest at the time constituted the largest percentage ownership of the Limited Partnership's fair market value. Paragraph 38, Alan C. Cartwright, as the primary beneficiary of these trust instruments, was never in any way advised about the significant negative financial impact to him of placing all of these trust instruments into an illiquid Limited Partnership controlled by the defendants. Paragraph 39, placing the trust assets into the Cartwright-Garner Investment Company LP resulted in an exchange of actual income-producing assets for percentage ownership of the Limited Partnership. Paragraph 40, defendants Garner diminished the fair market value of the assets of the Alan C. Cartwright Grantor Trust, and on and on and on. The horse is allegations that they abused their power as trustees by creating this family limited partnership. I will point out that under Tennessee, well the Court of Appeals affirmed the Chancellor's ruling that the trusts were permitted to invest in this partnership. It was a permitted operation that was allowed under the trust documents. For them to say there are no trusts at issue in this case is changing the color of the horse. Now, they want to argue that this case doesn't involve trust administration. I can cite to the Court several cases, Daley v. National Hockey League, that describes what's involved in trust administration. This makes it a quasi-in-rem action. They say Princess Light is a mechanical rule. In looking at the actions in both the state court and the federal court, the Daley court said both actions in part involve the administration and restoration of corpus. That's what they want. You're exactly right, Your Honor. They want the restoration of corpus, where what they really want to do is to pay themselves. But they're not entitled to that. Whatever money has been taken improperly, if any, from these trusts goes back to the trusts. It doesn't go to Mr. Cartwright. In Starr v. Rupp, a Sixth Circuit case, the court said it is obvious that insofar as... That last point you made, is that analogous to my discussion about if there's an evil here, the trust should sue the Jackson partner, Cloud, get the money in the trust, and then it would go to whoever has interest in the trust. Well, I mean, the trusts are parties in the state court case. That's the point. The trusts are parties in both the Chancery case and in the pending circuit court case. When you say they're parties, are they defendants or plaintiffs? Well, they're defendants. But the Chancery court, as Judge McCollough pointed out, the Chancery court is looking at whether distributions are appropriate to Mr. Cartwright as the beneficiary of the trusts. And the Chancery court is charged with the duty of determining whether the administration of the trust has properly made distributions to him. The issue before the Chancery court on remand is whether all of these trusts, which were poured into the Grantor Trust, amendments to those trusts, properly are being administered, making distributions to Mr. Cartwright. I mean, with all due respect, the horse is still an administration of trusts, and it is that way under the various cases. I want to just say a word about the Cardin issue, if I may, because I think it's important. The issue of when you drill down to determine diversity, when you look at a trust, whether you consider the citizenship of the trustee or the dual citizenship of the beneficiary and the trustee. There's a Holmfeld case in the Sixth Circuit that tends towards saying that you only look at the citizenship of the trustee, but it considers no analysis of the Cardin case decided by the Supreme Court, Justice Scalia's opinion. There are cases which have come down the line, and I specifically refer the Emerald case out of the Third Circuit, that does an analysis of Cardin and decides that Cardin, in holding that you have to look at the citizenship of all the members of a trust to determine diversity, means you've got to look at the trustee and the beneficiaries. The cases that are coming along, and we didn't cite them in the brief, but I would do that now, that have a discussion of the proper way to conduct this analysis, which we say is dispositive as well as the Princess Leida case. But the court didn't rule on that. The court did not rule on it, Your Honor, but of course it is something, frankly, that I would request that this court might consider looking at for one reason. Even in my own district, Judge Mays seems to be tending toward the trustee-only rule, while Judge Anderson is tending toward the dual-trustee-beneficiary rule. And there are cases in the Sixth Circuit that are going both ways. The most recent analysis does use the analytical approach in Cardin, which means that you have to use the dual-beneficiary-trustee analysis to get to the question of diversity. And in this case, you would drill down to the trusts. The beneficiary, Mr. Cartwright, is a Tennessee resident, and he's on both sides of the V, so you don't have diversity. It sounds to me like you're asking for the advisory opinion for this court. If you want us to affirm the district court, why don't we get involved in advisory opinion? Well, Your Honor, frankly, if you affirm the district court, there's no need to get involved. And maybe it's the power of this court to address the issue in that case. And entirely, I'm suggesting it because I think it may be an issue the court might want to look at. And I understand where you're coming from. But I would cite the court to the Wang case, which is 841-Fed-Sub-2nd-198-2012 case out of the District of Columbia. The Sonovas case out of the Southern District of New York, 2013, Westlaw 44-35-41, and the Berry case out of the Southern District of Texas, 2013, Westlaw 41-62-18. Those three cases have a solid analysis of Cardin, and those three cases show that you've got to do the dual beneficiary-trustee analytical approach to determine jurisdiction. I appreciate the court hearing me on this. Thank you, Your Honor. Thank you, Counsel. Mr. Mitchell, you have your two minutes for rebuttal. Thank you, Your Honor. Mr. Wade has indicated a number of times his theme of this oral argument that we've been chasing a horse all around the field. And I'd just like to point out a couple of things about that. There were a couple of times in oral argument that Mr. Wade, I believe, inflated the allegations that were made in 2007 with the allegations that were made in the most recent circuit court complaint. I'd like to point out that the first time that Alan Cartwright had the opportunity to bring these tort allegations against the Garners was in the federal court case. We haven't been chasing them around. There were other allegations made against other defendants that were in the circuit court in 2007. That's all subsequent to Mr. Cartwright's mother first filing lawsuit in 2004 in the Chancery Court. So there's the procedural posture of tort claims filed in 2007 in the state court and the circuit court that were consolidated for hearing and trial and bifurcated right on the eve of trial and then non-suited. So the first opportunity we had, we brought those claims in federal court. That's our first chosen venue and forum because we had diversity there and we believe the federal system is the appropriate place. We have the right to choose that. I'll mention briefly that the Schubert decision is an unreported case and pursuant to Rule 24 of the Sixth Circuit Rules. I mentioned in my opening oral argument that there is no reported case and I maintain that pursuant to Rule 24 that that's not a case that ought to be even considered. Pursuant to that rule, if it were going to be brought up, it should have been brought to our attention or the court's attention prior to oral argument. As far as prejudice to the plaintiff, if we are thrown out or dismissed rather than We've got a time bar question. We've got a procedural bar. Statute of limitations problems was returning. We've got claims against the Garners that we would otherwise be unable to bring if we were dismissed rather than at worst stayed. I've got three seconds if I may be The Chancery Court wasn't open to you for those claims? The Chancery Court in Tennessee wasn't open to you to make similar claims? The Chancery Court was open to us to make those claims, yes. We had the opportunity to make those claims in Chancery Court but they were bifurcated right before the trial was supposed to take place the first time just prior to summary judgment. They're still pending then? Those claims are not pending in the Chancery Court. Those claims are not pending in the Circuit Court. And they're not pending because? They're not pending because we didn't bring them there. We chose to bring them in the Federal Court. I thought I heard you just say that you had brought them but then they were bifurcated. There were some similar claims against a similar group of defendants brought in the Circuit Court in 2007. Those were non-suited. And that's the voluntary dismissal? That's the voluntary dismissal, yes, Your Honor. So you didn't bring them but then you unbrought them? We brought them and then unbrought them, yes, Your Honor, because we spent several years with a consolidated framework against our own protests. The defendants wanted them consolidated for discovery and trial and heard by designation, not as Chancery Court issues. We took the last little bit of your time. Go ahead and make the point you wanted to. Yes, Your Honor. The facts of this case, the allegations that Mr. Wade read from our Federal Court complaint are all before the counts of our complaint. They're not allegations that we're making. They're factual allegations but they're not allegations of breaches or wrongdoing. They're not tort allegations. They're just mud you're throwing up. I'm sorry? They're just mud that you're throwing up. Well, they're an attempt to give the Federal Court the background of this convoluted procedural posture of the case prior to getting some value to that. Thank you, Your Honor. All right, anything else? Colleagues, thank you. That case will be submitted. The remaining cases on the docket will be submitted on briefs. And the Court may adjourn.